### Koehler v. Commonwealth.

(Decided January 20, 1928.)

Appeal from Jefferson Circuit Court.
(Criminal Branch.)

1.  Criminal Law.—In prosecution for unlawful possession of intoxicating liquor, where only witnesses for commonwealth were county patrolmen, who discovered evidence while serving order for delivery of personal property, since defendant objected to testimony of first witness, and moved to strike his testimony, and for directed verdict at close of testimony, he did not waive incompetency of witness or of his testimony.

2. Criminal Law.—Where prosecution for unlawful possession of intoxicating liquor was based on testimony of two county patrolmen, who served order for delivery of personal property, since defendant objected to testimony of first county patrolman as a witness, and moved to strike his testimony and for directed verdict, failure to object to testimony of second patrolman as a witness was not a waiver of incompetency of witness or his testimony.

3. Criminal Law.—Ordinarily, a motion for peremptory instruction does not present question of competency of testimony or of witness, but only sufficiency of testimony to sustain verdict.

4. Criminal Law.—Where no grounds or reasons were assigned for a motion for a peremptory instruction, it is presumed by the Court of Appeals that grounds for the motion were bottomed on insufficiency, and not incompetency, of evidence.

5. Criminal Law.—Where court has once ruled on question of competency of offered testimony, defendant who objects to such ruling need not continuously thereafter object to same line of interrogation, based on same grounds, when it arises in examination of other witnesses.

6. Replevin.—Since, under Ky. Stats., secs. 3780-3786, before amendment of Acts 1926, c. 122, county patrolmen have authority of sheriffs only to make arrests and searches and seizures, other official duties of sheriffs were withheld from them, and hence they are not authorized to execute order of delivery of personal property issued by a justice of the peace.

7. Replevin.—County patrolman was not authorized to execute order of delivery of personal property as a special constable, since consent of county judge therefor, under Ky. Stats., sec. 425, was not first obtained nor record thereof made, and hence his testimony of discovering liquors in defendant's residence when serving order, was incompentent.

8. Criminal Law.—Evidence of county patrolmen of discovering intoxicating liquor on defendant's premises while unlawfully executing order for delivery of personal property was incompetent, and insufficient to sustain conviction.

9. Criminal Law.—Where county patrolmen were unlawfully on defendant's premises to execute order of delivery of personal property, that defendant's alleged offense of possession of intoxicating liquor was committed in their presence did not render testimony of their discoveries while on premises competent, or authorize them to arrest defendant for commission of offense.

GEORGE J. HAER and JAMES SPEED for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Reversing.

At his trial before the county judge of Jefferson county under a warrant charging him with the unlawful

possession of intoxicating liquor, the appellant and defendant below, Andy Koehler, was convicted. He prosecuted an appeal to the criminal branch of the Jefferson circuit court, and on his trial therein he shared a like fate. From the judgment therein rendered on the verdict of guilty he prosecutes this appeal, urging through his counsel but one error for reversal, which is the incompetency of the testimony introduced by the commonwealth, and which incompetency consisted in the unlawful entry into defendant's residence, where the liquor was found, of the two county patrolmen of Jefferson county, who were the only witnesses that the commonwealth introduced.

A preliminary question urged by counsel for the commonwealth in opposition to defendant's right to rely on his single ground for a reversal should be disposed of, and it is, that defendant did not properly raise it in the court below, and thereby waived it, both as to the incompetency of the witnesses and of their testimony. The two county patrolmen who, as we have said, were the only witnesses for the commonwealth, were E. Gallrein and a Mr. Horn, whose given name or initials do not appear in the record. Upon the offering of Gallrein, who was the first witness, the bill of exceptions disclosed that "the defendant thereupon makes an objection to all of this testimony on the ground that there is no search warrant," and at the close of the testimony of that witness the defendant "moved the court to strike all of the testimony of the witness that has just been testified to," which was overruled with exceptions. Thereupon Horn was introduced, who testified to practically the same facts as did the other witness, and at the close of his testimony in chief, and before commencing the cross-examination this appears in the record, "the defendant moved the court to dismiss the case on the ground that there is no search warrant," which was overruled, with exceptions. At the close of the entire testimony the record discloses that "the defendant thereupon moved the court for a directed verdict to find defendant not guilty, on the ground that there is no search warrant, and that the officers had no authority to execute the order of delivery mentioned, as they were county police officers, and were appointed special bailiffs by the constable, who was without authority to appoint them as special bailiffs, and that they were trespassers on the place, and that the

liquor they found at the place was found under an illegal search. Motion overruled, to which the defendant excepts."

It will be observed that the question as to the competency of the testimony of Gallrein was specifically raised and preserved in a manner often approved by this court, i. e., a preliminary objection to his testifying on the very ground of incompetency now relied on, followed by a motion to exclude his testimony upon the same ground. The argument of the commonwealth that defendant waived the incompetency of that witness and also his testimony is without merit, and cannot be sustained. The objections to the testimony of the witness Horn were not made by defendant in the same manner or form as he did to the testimony of the witness Gallrein, and it might be insisted that, although the latter should be held to be an incompetent witness, and that his incompetency was properly raised and preserved in the trial court, yet the practice pursued by defendant relative to the competency of the testimony of witness Horn was insufficient to raise the question of his incompetency or that of his testimony, and, being so, it was waived by him. But we·are not inclined to so construe the record.

It is true, as is insisted by the commonwealth, that ordinarily a motion for a peremptory instruction does not present the question of the competency or incompetency of the testimony or of the witness, but only the sufficiency of such testimony to sustain the verdict, and which was so held by us in the cases of Mullins v. Commonwealth, 204 Ky. 445, 264 S. W. 1048; Scott v. Commonwealth, 206 Ky. 286, 267 S. W. 159; and Wiggins v. Commonwealth, 221 Ky 287, 298 S. W. 686. In each of those cases the defendant merely moved for a peremptory instruction of acquittal without stating the ground therefor, and, when so framed, his motion, under the cited cases, had only the effect of challeging the sufficiency of the testimony to sustain the conviction. In this case, as we have seen, defendant, at the close of all of the testimony, including that of the witness Horn, moved for a directed verdict of acquittal upon the express grounds (as contained in his motion) that the testimony of that witness was wholly and entirely incompetent, and incorporated the reasons therefor, and which, we conclude, differentiates this case from the rule laid down in the cited ones, supra, wherein, we repeat, there were no grounds or reasons assigned for the motion, and without

which, as held in those cases, it would be presumed by this court that the grounds for the motion were bottomed upon the insufficiency, and not the incompetency, of the evidence. In other words, the motion of defendant in this case was, in effect, a motion to exclude the testimony of the commonwealth's witnesses, because all of it was incompetent for the reasons he assigned in his motion, which expressly refuted other presumptions relative thereto.

Independently, however, of that interpretation by us, it is a settled rule of practice that, where a court has once ruled on the question of competency or incompetency of certain offered testimony, the litigant who objects to such ruling is not required to continuously thereafter interpose his objections to the same line of interrogation based upon the same grounds whensoever it may subsequently arise in the examination of other witnesses. If he once objects to a particular character of testimony on definite grounds, he need not repeat that objection, if the same character of testimony be thereafter offered by his adversary, in order to entitle him to the benefits of its incompetency, since he may rely on the first erroneous ruling of the court without interposing his objections throughout the trial. See Cincinnati, N. O. & T. P. Ry. Co. v. Bennette, 134 Ky. 19. 119 S. W. 181, and L. & N. R. R. Co. v. Rowland, 215 Ky. 663, 286 S. W. 929, and also 8 Ency. P. & P. p. 229, and 3 C. J. 823, Sec. 734. We therefore conclude that defendant in the practice of his case did not waive his right to insist on the incompetency of the commonwealth's testimony.

A justice of the peace issued an order for the recovery of specific personal property from defendant in a proceeding of claim and delivery filed in his court. The constable of the district to whom the order was delivered handed it to the witness Horn, who orally requested the witness Gallrein to accompany him, and they then went to defendant's dwelling for the purpose of recovering the property, which was some articles of household furniture and household goods. While in the dwelling they discovered the liquor which defendant was charged with unlawfully possessing. They had no search warrant, and counsel for the defendant insists that they were not authorized by statute or otherwise to execute the particular civil process issued by the justice of the peace, and that their entry into defendant's dwelling for that purpose was illegal, and the discoveries they made therein,

upon which the accusation is based, cannot be relied on by the commonwealth, since the witnesses had no warrant to search his dwelling. Defendant seems to concede, and we have no doubt as to the correctness of the concession, that, if the witnesses were lawfully in defendant's dwelling for the purpose of executing process, they were legally authorized to execute, any discovery made by them while so engaged would be competent upon the same ground that discoveries made by an officer in the act of or after arresting one whom he had the right to arrest is competent. The question would therefore seem to turn on whether the patrolmen were legally authorized to execute the order of delivery issued by the justice of the peace.

As stated, both of the witnesses against defendant were county patrolmen. The statute providing for their appointment and prescribing their duties is chapter 95 of the 1922 edition of Carroll's Kentucky Statutes, beginning with section 3780, and closing with section 3786, as amended by chapter 122, p. 601, Session Acts of 1926. That amendment, however, did not relate to any feature of the statute touching the question here involved, but, if otherwise, it would not apply, since it took effect after the happening of the transactions here involved, which was in February, 1926, and the amendment of that year did not take effect until some time in June thereafter. We will not repeat in this opinion the duties of county patrolmen as prescribed in the statute, but content ourselves with the general statement that nowhere therein are they authorized to execute civil process emanating from a court of justice of the peace, which is the only question we have here. The original statute providing for such county patrolmen was amended in 1912 and by another amendment of March 23, 1920 (chapter 80, p. 376, Session Acts for that year), it was provided that:

"Said patrols shall have the same right and same power to arrest, search and seize, as is now given by law to the sheriffs of this commonwealth and shall be subject to the orders of the county court."

The commonwealth relies on that provision as conferring authority upon the commonwealth's witnesses in this case to execute the order of claim and delivery for the specific recovery of personal property which was issued by the justice of the peace of Jefferson county, and

in the execution of which the witnesses gained entrance into defendant's dwelling, and while there discovered the liquor with which he is charged as unlawfully possessing.

We cannot, however, agree with that contention. The language of the 1920 amendment to the patrol statute, and which is invoked by the commonwealth as conferring such authority upon county patrolmen, only purports to confer upon them the same power to make arrests, and to make searches and seizures "as is now given by law to the sheriffs of this commonwealth." That language specifically confines the delegated authority of the sheriff upon patrolmen to only two official duties of the sheriff, i. e., making arrests and making searches and seizures. Under fundamental rules of interpretation of statutes other official duties of sheriffs were withheld from patrolmen, and to uphold the contention of counsel for the commonwealth would be reading into the statute something that the Legislature did not see proper to incorporate therein. The intention of that amendment, no doubt, was to enlarge the powers of county patrolmen so as to better enable them to perform the purpose of their original creation as preservers of good order, and possibly conservators of the peace, but the Legislature did not intend thereby to confer upon them the general duties of sheriffs in the execution of all sorts of process both criminal and civil, which, if done, would have virtually made them deputy or assistant sheriffs within the county wherein they were appointed. The original act by which they were created did not authorize them to make arrests of offenders against the penal or criminal law, nor did it vest them with authority to execute search warrants or any civil process, and the amendment only conferred authority for them to make arrests and to execute search warrants. We find nothing in any section of the statute remotely intimating, much less actually conferring, authority upon such patrolmen to execute the character of civil process involved in this case.

But it might be insisted that the constable, by delivering the process to Horn, thereby vested him with power to execute it, but which is equally as untenable as the contention we have just disposed of. The only statute whereby a constable may confer authority upon another to perform his duties in the execution of process coming to his hands is contained in section 425 of the Statutes, and which provides for the appointment of a deputy con-

stable, which must be done only with the consent of the county judge, and, of course, it should be made a matter of record in the office of the latter. There is no pretense that either of the commonwealth's witnesses had been so appointed at the time they attempted to execute the order of delivery issued by the justice of the peace in this case. Neither was either of them vested with authority to execute that process in the manner prescribed by the provisions contained in section 701 of the Civil Code of Practice, which says that such process issued by a justice of the peace "shall be directed to a constable: or to a special agent appointed by the justice, by an endorsement on the process, upon an affidavit of the plaintiff or his agent being filed before the justice, to the effect that the process cannot be executed, according to the belief of the affiant, unless such special agent be apointed."

Neither of the commonwealth's witnesses was so appointed by the justice who issued the process in this case, and no authority, therefore, was conferred upon them as such special agent. It is therefore apparent that neither of the two patrolmen who as above stated were the only witnesses who testified for the commonwealth, can justify his entering defendant's residence under the process that they claimed the right to execute, and their entry was consequently illegal, and their discoveries while there are not rendered competent upon the ground that they were made while the witnesses were lawfully in defendant's residence for the purpose of executing the civil process. That being true, and they having no search warrant, their discoveries therein were incompetent under numerous opinions of this court, some of which are: Mattingly v. Commonwealth, 197 Ky. 583, 247 S. W. 938; Youman v. Commonwealth, 193 Ky. 536, 237 S. W. 6; and Ash v. Commonwealth, 193 Ky. 452, 236 S. W. 1032.

But learned counsel for the commonwealth insist that the offense with which defendant was tried was committed in the presence of the commonwealth's witnesses, and which, if true, rendered their testimony competent, and likewise authorized them to arrest him for the commission of such offense; but the trouble with that contention is that the "presence" of the officers in defendant's dwelling is the very thing that was unlawful in this case. If that argument should prevail, then all discoveries made by an officer through unlawful entry on premises or in houses that may not be searched with-

out a search warrant would be competent, because, according to the contention, the offense was committed in the presence of the officer, since he is always present at the place where he carries himself, and the constitutional provision against unlawful seizures and searches was exclusively directed towards preventing him from carrying himself into or upon certain designated places or houses, or seizure of persons without a search warrant or other proper authority of law.

Other collateral questions directly bearing upon those hereinbefore discussed are referred to in briefs. The conclusions above expressed, however, render it unnecessary to refer to or determine any of them, since the objection raised and relied on here affects the competency of all of the testimony of the commonwealth, and, as we have pointed out, it was incompetent. It follows that the motion for acquittal should have been sustained.

Wherefore the motion for appeal is sustained, and the appeal is granted, and the judgment is reversed, with directions to set it aside and grant the motion for a new trial, and for proceedings consistent herewith.